[Crim. No. 1689.   Third Appellate District.—November 4, 1939.]

THE PEOPLE, Respondent, v. JIMMIE MANDELL et al., Appellants.

W. C. Dorris, R. W. Henderson and James F. Gaffney for Appellants.

Earl Warren, Attorney-General, and J. Q. Brown, Deputy Attorney-General, for Respondent.

THOMPSON, J.—The appellants were jointly indicted and convicted under section 266a of the Penal Code of the crime of taking a female person for the purpose of prostitution by means of fraudulent inducement. From the judgments of conviction which were accordingly rendered against them, separate appeals have been perfected. The appeals were consolidated for hearing.

It is contended the judgments are not supported by the evidence chiefly because of a lack of testimony that the consent of the female person was procured by fraudulent inducement,

particularly with respect to the defendant, James Mandell; that the Superior Court of Sacramento County lacked jurisdiction for the reason that the inducement, if any, was made in Kern County and not in Sacramento County; that the indictment fails to state a cause of action since it does not allege the particular means by which the consent of the victim was procured, and that the court erred in giving to the jury certain challenged instructions and in refusing to limit evidence of other offenses of pandering to the defendant Hovermale.

The judgments are adequately supported by the evidence. The defendant, Roy Hovermale, brought the prosecutrix, a minor, in his automobile from Oklahoma to Bakersfield, California, where they met the codefendant, Jimmie Mandell. The sordid story shows that the woman was induced to go with the defendants to Isleton by a promise to secure a position for her at that place as a waitress. She testified that "Roy called me and said he had a job for me in Isleton as a waitress". That statement was made in the presence and hearing of Mandell. She testified, "Q. Just tell what happened and who promised you (the job) and who was there. . . . A. Jimmie and Roy and I and Flash Wimmer. . . . We was sitting in Roy's brother's car." That night Miss Price took her suitcases and left Bakersfield for Isleton in company with the two defendants to secure the position for her as waitress. Instead of going directly to Isleton they first drove to Rio Vista where they ate breakfast the following morning. They then drove to Isleton. Jimmie did the driving. On the way to Isleton, in the presence of the three occupants of the car, Roy told her she "was going to work". When they arrived at Isleton the car was parked near a building where a poolroom and a house of ill-fame were operated by Bill Bulehan, a Filipino. The house was called the Larena Rooms. Both defendants started to leave the machine, but Roy told Jimmie to remain in the car. Hovermale went in and arranged with the proprietor to take the girl into his apartments as an inmate to practice prostitution. After considerable conversation she was left at that place for two days during which she practiced prostitution, dividing the money which she received therefor equally with the proprietor of the house. He collected all of the money she earned. Her customers were chiefly Orientals. During that period of time both defendants demanded and received from Bulehan a

portion of her earnings. The evidence leaves no doubt that both defendants knew she was left at that house for immoral purposes and both of them accepted proceeds from her earnings. While she was not engaged in her occupation she was locked in her room. While she was there she was kept under the observation of a guard. She said she was kept there as a captive.

Soon after arriving at Isleton she was taken into custody and the defendants were arrested on the charge for which they were subsequently indicted. The woman was an unwilling witness at the trial.

It is strenuously insisted by the defendant, James Mandell, that the evidence shows no false statement on his part to induce the girl to follow the practice of prostitution. It is true that she contradicted herself to some extent regarding his immediate presence when Hovermale told her he had a place for her in Isleton as a waitress. The jurors were the sole judges of the credibility of her story. She first said they sat in an automobile together when that statement was made. The jurors had a right to assume that her later modification of that statement was made in an effort to exonerate Mandell from that inducement. But it is immaterial whether Mandell actually told her personally that they were taking her to Isleton to install her in a position as a waitress. The defendants were companions. Both of them were parties to the plan to induce her to follow the practice of prostitution. Both of them knew the nature of the house where she was left for that purpose. Both of them participated in the profits of her practice. The elements of inducement and prostitution were intermingled and portions of a continuous offense in violation of section 266a of the Penal Code. As such, both of the defendants became principals in the crime. (Sec. 971, Pen. Code.) The evidence abundantly shows that both defendants are guilty of the crime with which they were charged.

■ The appellants assert that the Superior Court of Sacramento County lacked jurisdiction to try this case for the reason that the consent of the victim was procured in Kern County. There is no merit in this contention. The acts constituting the offense were continuing. The crime was consummated in Sacramento County. That is where she was persuaded to submit to prostitution. ■ When a female person is taken for prostitution purpose by means of false in-

ducement from one county into another county where the purpose is consummated, either of those counties has jurisdiction of the offense. (Sec. 781, Pen. Code; *People* v. *Grubb,* 24 Cal. App. 604 [141 Pac. 1051] ; *People* v. *De Martini,* 25 Cal. App. 9 [142 Pac. 898] ; *People* v. *Anderson,* 3 Cal. App. (2d) 521 [40 Pac. (2d) 270].)

The indictment states a cause of action under section 266a of the Penal Code for taking a female person for the purpose of prostitution by procuring her consent by means of fraudulent inducement. It alleges that the defendants, "did then and there wilfully and unlawfully and feloniously take a female person, to wit, . . . for the purpose of prostitution, by procuring the consent of said . . . by fraudulent inducements and misrepresentations."

Section 266a provides that:

"Every person who, within this state, takes any female person against her will and without her consent, or with her consent procured by fraudulent inducement or misrepresentation, for the purpose of prostitution, is punishable," etc.

The offense may be committed in two ways, first, by taking a female person for prostitution purpose, *against her will;* secondly, by obtaining her consent by means of fraudulent inducement. The latter offense is clearly charged in the present case. The defendants failed to demur to the indictment. In the absence of a demurrer, the indictment charges the offense with sufficient particularity. (Sec. 1012, Pen. Code.) It is in the language of the statute. There is no question regarding the specific offense with which the defendants were charged. The indictment conforms to the requirements of sections 950, 951 and 952 of the Penal Code. Usually it is not necessary that an indictment shall allege the particular manner or means by which the offense is accomplished. (31 C. J. 711, sec. 262.) Where the statute contains several provisions, the violation of any one of which is an offense, the facts should be so stated as to render apparent which provision is relied on. (31 C. J. 703, sec. 254.) In the present case it is clearly apparent from the indictment that the defendants were charged with procuring a female person to submit herself to prostitution *by means of false inducements* as distinguished from taking her by force and against her will. In the case of *People* v. *Wright,* 26 Cal. App. (2d) 197

[79 Pac. (2d) 102], in which case a hearing was denied by the Supreme Court, an information merely charged the defendant with pandering under the statute of 1911. (Stats. 1911, p. 9; 1 Deering's Gen. Laws of 1931, p. 819, Act 1906), by alleging that he did "Wilfully, unlawfully and feloniously procure for a female person . . . a place as an inmate of a house of prostitution". It was there held to be unnecessary to specify in the information the particular means which induced her to become an inmate of that house. In the present case the defendants were charged in the language of the statute with procuring the consent of the female *by means of fraudulent inducement.* The allegation of the particular means employed to secure her consent is important only to determine whether the alleged acts or statements were false. There is proof that the statement by means of which her consent was procured was false. The appellants waived their objection to the insufficiency of the allegation in that respect by failing to demure to the indictment.

The court did not err in failing to specifically charge the jury that the defendants could not be found guilty if the evidence merely proved that they took the prosecuting witness for the purpose of prostitution *against her will.* No such instruction was offered by the defendants.

The instructions which were given regarding the offense which was charged are not misleading. If the defendants desired a more specific instruction in that regard they should have requested it. By their failure to do so they waived the right to complain of that omission for the first time on appeal. (*People* v. *Olsen,* 80 Cal. 122, 128 [22 Pac. 125]; 8 Cal. Jur. 309, sec. 362.) In *People* v. *Scofield,* 203 Cal. 703 [265 Pac. 914], it was held to be error for the court to fail to instruct the jury on its own motion regarding distinct crimes which were alleged in separate counts under section 141 of the Vehicle Code. But in that case the defendant was specifically charged in separate counts of the information with different offenses which were directly involved in the case. It is apparent that evidence to support one of the charges might be insufficient to uphold others. That case has no application to the situation in the present case. In this case the court read to the jury section 266a of the Penal Code and read the indictment which clearly charges but one offense, which

is the taking of the woman for the purpose of prostitution by means of *fraudulent inducement*. It does not state that she was taken against her will. The clear statement is that her *consent* was obtained by fraudulent inducement. That refutes the possibility of her having been taken against her will. The court then specifically charged the jury that the "plea puts in issue every material allegation of the information and charge, and it devolves upon the prosecution to establish beyond a reasonable doubt that they, the said defendants, are guilty *of the crime charged against them in the information"*.

We are satisfied the jury could not have been misled by the instructions in that regard. The entire case was tried on the theory that the woman was taken, not against her will, but with her consent procured by fraudulent inducement.

■ It is contended by the appellant Mandell that the court erred in refusing to instruct the jury that evidence which was adduced tending to show that Hovermale was engaged in the business of pandering and that he previously procured several other women as inmates of another house of prostitution, should be limited to the charge against Hovermale. A witness by the name of Ah Lee testified that within a year prior to the time of trial of this case the defendant, Hovermale, procured as inmates of Ah Lee's house of prostitution at Reedley four other women. The witness specifically testified that the defendant, Mandell, had nothing to do with those transactions. He repeatedly said he had never seen Mandell until the time of the trial. This evidence was offered to show the motive or purpose of Hovermale in procuring the girl to become an inmate of the Larena Rooms at Isleton. In the case of *People* v. *Grubb*, 24 Cal. App. 604, 609 [141 Pac. 1051], in which a hearing was denied by the Supreme Court, it was definitely held that evidence of prior efforts by the defendant to procure other women to become inmates of similar houses of prostitution was competent "for the purpose of showing guilty intent". It is true that the charge in that case was pandering. But the charge in the present case involves the elements included in pandering. On the authority of the last-cited case, we are of the opinion the testimony was properly received in evidence. Moreover, the defendant Hovermale has filed no brief on appeal. His appeal was submitted on the briefs of counsel

for Mandell, who does not contend the evidence is not competent as against Hovermale.

Assuming that the court should have instructed the jury, as requested, that the evidence of that previous conduct of Hovermale did not apply to the defendant Mandell, the refusal to do so was not prejudicial. There is no evidence that the defendants were formerly associates, or that they were even acquainted until just prior to April, 1939, when they were charged with this offense. The jury could not reasonably assume that Hovermale's previous practice of pandering involved the defendant, Mandell. Moreover, there appears to have been no miscarriage of justice in this case, and the error complained of is therefore cured under the provisions of article VI, section 4½, of the Constitution of California.

The judgments and the orders are affirmed.

Tuttle, J., and Pullen, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on November 18, 1939, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 4, 1939.