[Crim. No. 6815. Second Dist., Div. One. Apr. 19, 1960.]

THE PEOPLE, Respondent, v. DOYLE TERRY, Appellant.

Harold J. Ackerman and Russell E. Parsons for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Respondent.

LILLIE, J.—Terry was charged by an information filed on August 28, 1958, with three felony counts: (1) violation of Penal Code, section 288, committed with a child named Richard; (2) another violation of section 288 involving Richard's younger brother, Timothy; and (3) violation of section 286 (crime against nature) committed on the person of Timothy; all occurring on or about August 1, 1958, in the city of Los Angeles. A jury returned guilty verdicts on all three counts and defendant's motion for new trial was denied. He also filed an application for probation; before ruling thereon, the court committed him to the state hospital for observation as a probable sexual psychopath (Welf. & Inst. Code, § 5504). Returned to court some two months later, following advices from the hospital that he was not a sexual psychopath, defendant was refused probation and sentenced to the state prison. He has appealed from the judgment; an earlier appeal from the order denying a new trial, prematurely filed and prior to disposition of the matter of probation (rule 31 (a), Rules on Appeal), will be dismissed.

Because they concern several of the contentions on appeal, we review the following events. The cause was originally set for trial on October 23, 1958; on motion of defendant, trial was continued to December 4 and again to December 5, 1958.

On the latter date a continuance was obtained by the People, defendant agreeing thereto, and the matter eventually proceeded to trial on January 28, 1959. Prior to this, from August 4 to August 30, both minors had been detained in juvenile hall; each testified (and was cross-examined) at the preliminary hearing conducted on August 21. On August 30 both were released under an order signed by the judge presiding in juvenile court for transportation to Virginia where their father, a captain in the United States Navy, maintained his residence. Each was absent from the state at the time of the trial, and their prior testimony at the preliminary hearing was introduced pursuant to the provisions of section 686, subdivision 3 of the Penal Code.

Defendant's points on appeal may be summarized under the following headings: (1) Foundation evidence for the introduction of testimony under section 686, subdivision 3, Penal Code, should not have been taken in the presence of the jury; (2) defendant was deprived of due process by the order of the juvenile court improperly removing the two witnesses from the jurisdiction; (3) the trial court improperly edited the transcript of the preliminary hearing; (4) the People should have utilized section 1334 or section 879 of the Penal Code before being allowed to introduce the prior testimony; (5) the prior testimony was used as a basis to convict on a charge different from the one at issue in the preliminary hearing; (6) prejudicial misconduct by the prosecutor; (7) insufficiency of the evidence as to the violation of section 286; and (8) error in the admission of certain other testimony.

Because of their interrelation, the first four of the contentions above stated will be considered collectively; basically they assert that appellant upon the trial was unconstitutionally deprived of the right to confront his accusers face to face and cross-examine them, and that due process of law was thereby denied him (Cal. Const., art. I, § 13). The privilege of confrontation by witnesses is "guaranteed by subsection 3 of section 686 of our Penal Code subject to the limitations there stated." (*People* v. *Valdez,* 82 Cal.App.2d 744, 749 [187 P.2d 74 ].) Said subsection provides that a defendant is entitled "to produce witnesses on his behalf and to be confronted with the witnesses against him, in the presence of the court, except that . . . the testimony on behalf of the people or the defendant of a witness deceased, insane, *out of jurisdiction,* or who cannot with due diligence be found within the state, given on a former trial of the action in the presence of

the defendant, who has, either in person or by counsel, cross-examined or had an opportunity to cross-examine the witness, may be admitted'' (emphasis added). The procedure thus authorized has withstood attack on constitutional grounds—it is neither repugnant to the Sixth Amendment to the federal Constitution nor to section 13, article I of the Constitution of this state. (*People* v. *Hermes*, 73 Cal.App.2d 947, 955 [168 P.2d 44].) ''Due process of law is not denied by the introduction of the deposition of a witness taken upon the preliminary examination before a committing magistrate in the presence of the defendant where he cross-examined or had the opportunity of cross-examining the witness when such witness is absent from the state or the prosecutor has been unable to procure his attendance'' (*People* v. *Raffington*, 98 Cal.App.2d 455, 458 [220 P.2d 967]).

 In the case at bar the testimony introduced was first tested by the process of cross-examination which, the record discloses, was utilized at considerable length; therefore, unless there existed other circumstances, to be discussed hereinafter, it would appear that appellant's constitutional rights were not infringed.

Although declining to challenge the unquestioned authority of our Legislature to exercise full control over court procedure in both civil and criminal cases (*People* v. *Bernstein*, 70 Cal. App.2d 462, 469 [161 P.2d 381]), appellant nevertheless complains that prejudicial error was committed by taking foundation evidence in the presence of the jury which bore on the right to read the prior testimony of the two minors. Parenthetically, while there must be some showing of ''due diligence'' when the witness ''cannot . . . be found within the state'' and the question thus presented ''is largely within the discretion of the trial court'' (*People* v. *Thomas*, 164 Cal. App.2d 571, 576 [331 P.2d 82]), it has recently been restated by our Supreme Court that ''the due diligence requirement is inapplicable'' where the witness is absent from the state (*People* v. *Carswell*, 51 Cal.2d 602, 605 [335 P.2d 99]) ; hence, while it would seem to have been unnecessary for the foundation to be laid, since it is not seriously urged that the witnesses were not in fact absent from the state, testimony of that nature was received and appellant is within his rights in making the point now to be considered. Ordinarily, the better practice requires that all doubtful questions of evidence or procedure should not be proposed or discussed in the presence of the jury (64 C.J.S. 135), although there ''is no im-

propriety in the discussion of the merits of an objection to the admission of evidence in the presence of the jury, unless it appears that there is a possibility that the minds of the jurors may be influenced or prejudiced . . . *pro* or *con* during such discussion, or evidence introduced in its course." (*Scott* v. *Sheedy,* 39 Cal.App.2d 96, 103-104 [102 P.2d 575].)

Should it be claimed that the minds of the jurors were prejudiced, it is incumbent upon an appellant to point out the particular evidentiary matters resulting in prejudice to his case. (*Scott* v. *Sheedy, supra,* 104.)

Appellant has endeavored to comply with the foregoing rule. First, he complains that from the evidence introduced the jury learned there were other defendants similarly involved (but separately tried), particularly one Wilson. However, these same matters were brought out at the trial in the course of the examination of appellant's witnesses and, assuming that it was error to introduce such material, the error was cured by the voluntary presentation of the same evidence by appellant. (*People* v. *Healey,* 52 Cal.App. 563, 564 [199 P. 551].) Too, if the jury was disposed to disbelieve the two minors, it is not likely that they would be deterred from so doing by the fact that the youngsters had made additional accusations. Secondly, there was testimony that the boys had already been caused too much embarrassment and were getting low grades in school; the father gave this additional reason for their failure to return as witnesses. It hardly seems likely that such a circumstance could cause the jury to accord further credence to the victims' testimony; additionally, it is established that both sides are free to produce testimony which explains the absence of a logical witness. In *People* v. *Lyons,* 50 Cal.2d 245, 266 [324 P.2d 556], the Supreme Court said: ". . . the prosecution was entitled to explain why Gallo was not produced, to forestall any question which might arise in the minds of the jury as to why Gallo did not testify." Thirdly, it is urged that the jury learned that the father of the victims was a person of some importance in the nation's capital and that in such capacity he had occasion to confer with the President. By way of setoff, on the other hand, the jury also learned some matters which might be considered derogatory about the family—that there had been a divorce, from which it might be inferred that the youngsters did not have the best parental supervision. Fourth, in the course of testimony explanatory of the minors' absence from the state, the judge of the juvenile court testified that the

boys belonged in a nondelinquent group and that their best interests would be served by keeping them in Virginia. This, of course, bore on their credibility, at least to the extent that they had committed no crimes and had not theretofore been arrested. But since the absence of the witnesses from the state was an essential issue at the trial, it would seem that the prosecution should not have been denied the right to explain such absence (*People* v. *Lyons, supra*). Additional points have been made; however, these and those previously mentioned are shorn of their validity in view of the admonition appropriately given the jury by the trial court before the foundation evidence was received. Thus, the jury was advised as follows: "Bear in mind, ladies of the jury, that the right of the District Attorney to read such testimony is a matter which rests in the discretion of the Judge and is not a matter to be ruled upon by the jurors. You are not to consider any of this testimony on the matter of the guilt or innocence of the defendant, but it is being received and read by the Court solely on the question as to the propriety of the Court allowing the District Attorney to read the testimony of one or more absent witnesses."

▌ Appellant next contends that the juvenile court, with the knowledge of the district attorney, improperly removed the two minors from the jurisdiction. It is, of course, axiomatic that the first concern of the juvenile court is the welfare of the minors within its jurisdiction, and such concern should not be sacrificed for other functions of the state, however proper they may be. In the present case the juvenile court had to deal with two boys without regard to the fact that such powers might be used to help or hinder a criminal prosecution. If it be suggested that the boys should have been detained in juvenile hall as witnesses, it is well settled that such action would have been highly improper. Thus, in *In re Singer*, 134 Cal.App.2d 547 [285 P.2d 955], it appears that the district attorney contemplated placing a hold on the child with a view toward using her testimony on behalf of the People. The court said (p. 551): "Authority of law is not vested in any court, official, officer or authority to seize the person of a minor and to incarcerate and to detain said minor for the sole purpose of keeping the minor available for use as a witness in a criminal proceeding or any other proceeding. . . . The taking of said minor into custody and her detention was illegal unless the same was a matter of immediate and urgent necessity for the protection of the welfare of the

child." Nor may it be said that the district attorney "conspired" with the juvenile court to send the witnesses beyond the jurisdiction. There was no question involved as to the eventuality of the witnesses leaving the state, and this seems to have been known even before appellant made his first motion for a continuance. A remark was made at the preliminary hearing concerning the wish of the boys to return East with their father; as a matter of fact, following the preliminary hearing they did return to Los Angeles at the behest of the district attorney, and even though appellant had sufficient grounds for a continuance, recourse could have been had at this stage to the procedure outlined in sections 1335-1345 of the Penal Code, providing that a defendant can examine a person about to leave the state and to perpetuate his testimony. The case of *Motes* v. *United States*, 178 U.S. 458 [20 S.Ct. 993, 44 L.Ed. 1150], relied upon by the appellant, is not in point. Therein it appears that the absence of the witnesses was "manifestly due to the negligence of the officers of the Government." A careful examination of the record simply does not support the appellant's claim that the district attorney was guilty of the negligence found to have existed in the Motes case.

The next assignment of error relates to the editing of the transcript of the testimony of the preliminary hearing. It appears that the preliminary hearing was held in conjunction with that of a codefendant, requiring an editing of the transcript to eliminate prejudicial material; failure to do so would have resulted in reversible error. (*People* v. *Brennan*, 121 Cal. 495, 501-502 [53 P. 1098].) The mere fact that the preliminary hearing concerns more than one person, necessitating the segregation of testimony relating to each (before reading it to the jury), does not give rise to error. (In *People* v. *Ashley*, 42 Cal.2d 246, 273 [267 P.2d 271], it was noted: "Although a count of criminal conspiracy was also involved at the preliminary hearing, that fact does not invalidate Mrs. Neal's testimony. Counsel examined the transcript and eliminated testimony that was inadmissible at the trial. The admissibility of controverted parts of the testimony was passed upon by the trial court before it was read to the jury." Since we are not directed to any assertedly prejudicial material which was read to the jury and which should not have been, the point appears to be without merit.

It is also contended that the attendance of the witnesses should have been compelled by utilizing section 1334

of the Penal Code. With the consent of the reciprocating state, this statute provides a method whereby a witness can be compelled to travel to the jurisdiction and to testify even against his will. Appellant concedes, in line with established authority, that the district attorney has no obligation to resort to this statute as a condition precedent to the introduction of the testimony desired. (*People* v. *Liner,* 168 Cal.App.2d 411, 415-416 [335 P.2d 964]; *People* v. *Cahan,* 141 Cal.App. 2d 891, 901 [297 P.2d 715].) Also, we are not persuaded, as appellant has suggested, that we should overturn the weight of authority thus cited. What has been said with respect to the application of section 1334 is also true of section 879 of the same code, which latter statute provides a technique whereby prospective witnesses can be bound where there is reason to believe that they may leave the jurisdiction. The cases hold that this section is merely permissive. (*People* v. *Day,* 219 Cal. 562, 565 [27 P.2d 909]; *People* v. *Myers,* 77 Cal.App. 10, 15 [245 P. 1106].)

 Originally the appellant was charged with violating section 288 of the Penal Code; by information these charges were extended to include the crime of sodomy (Pen. Code, § 286). Appellant concedes that it was not improper to add the additional count (*People* v. *Walker,* 170 Cal.App. 2d 159, 163 [338 P.2d 536]); he argues, however, that prior testimony concerning the sodomy charge was introduced without an opportunity to subject the same to cross-examination. Reliance is placed on *People* v. *Brennan, supra,* 121 Cal. 495, which, it is asserted, holds that it is error to read the testimony of an absent witness upon a charge not set forth in the original complaint. The cited case is not in point; the defendant there was charged with extortion, and the deposition testimony (determined to have been erroneously admitted) related to the commission of the crime of rape. It was not claimed that there was any connection between the charge of rape and the offense for the commission of which the defendant was being prosecuted; instead the testimony was received by the trial court solely "because it was stipulated" and notwithstanding its prejudicial nature. As stated by this court in *People* v. *Walker, supra,* 163, it is permissible to amend an information "at any stage of the proceedings as long as it does not 'charge an offense not shown by the evidence taken at the preliminary hearing,' even though a different offense is charged" (citations). Inherent in this principle (codified by Pen. Code, § 1008) is the limitation upon the right of a court

to receive prior testimony, only when a defendant has been accorded an opportunity to cross-examine in reference to the same general issue. Prior testimony may not be admitted on a wholly different charge. Says Wigmore ''Unless the issues were then the same as they are when the former statement is made, the cross-examination would not have been directed to the same material points of investigation, and therefore could not have been an adequate test for exposing inaccuracies and falsehoods.'' (Evidence, third ed. § 1386); too, ''(t)he situation is one that calls for common sense and liberality in the application of the rule, and not a narrow and pedantic illiberality.'' (*Ibid*, § 1387.) In the case at bar the charges are based on precisely the same transaction—perhaps we should say, the same assault. The facts that proved the charge of child molesting were the basis of the additional charge of sodomy. The majority rule, with which we agree, does not support appellant's contention (*State* v. *Dawson*, 129 W.Va. 279 [40 S.E.2d 306]; *Commonwealth* v. *Ryhal*, 274 Pa. 401 [118 A. 358]; *State* v. *Boyd*, 140 Kan. 623 [38 P.2d 665]; *Reg.* v. *Williams*, 12 Cox C.C. (Eng. 101)).

It is urged that the deputy district attorney was guilty of prejudicial misconduct. Thus, on one occasion he inquired as to the reason for the juvenile court hearing and whether if such hearing resulted from the fact that the minors were connected with some sex matters. An objection was sustained, but appellant claims that the jury accepted the question as a fact and formed an opinion accordingly. We are not persuaded that the question was asked ''solely for the wanton purpose of creating a prejudice against the defendant'' (*People* v. *Horowitz*, 70 Cal.App.2d 675, 694 [161 P.2d 833]); furthermore, the jury actually learned in the course of the trial (and in great detail) that the boys were involved in sex matters. On another occasion, the prosecutor endeavored to bring out that appellant remained mute when told that he was being arrested on a 288 charge—specifically, that he did not inquire as to the nature of such a charge. The prosecutor may have felt that appellant's silence evidenced a consciousness of guilt; without deciding that such a theory was here tenable, no bad faith appears. The deputy district attorney elicited of one Wilson, a defense witness, that a criminal charge for child molesting and sodomy (involving the same boys) was pending against him; an objection was sustained as to the form of the question. The possible bias of the witness was manifestly being inquired into; it may not be said that question in and of itself indicated any bad

faith. Other instances of claimed misconduct have been examined, and in our view they do not sustain the claim that unfair advantage was sought. Furthermore, the jury was duly admonished and it must be presumed that such admonition was observed.

 It is next claimed that the evidence was insufficient to support the conviction of violating section 286; first because the boy involved was an accomplice and his testimony was uncorroborated, and second, there was no proof of penetration. It is settled, of course, that corroboration of the complaining witness is necessary (*People* v. *Robbins*, 171 Cal. 466, 472 [154 P. 317]) unless he was not an accomplice.

 Timothy, the minor in question, was 11 years of age at the time of the act. By section 26 of the Penal Code it is provided that all persons are capable of committing crime except (among others) "children under the age of fourteen, in the absence of clear proof that at the time of committing the act charged against them, they knew its wrongfulness." Analyzing this requirement, it was stated in *People* v. *Becker*, 140 Cal.App. 162, 164 [35 P.2d 196], after reference to section 26: "No case has been called to our attention in which a child of eleven years has been held to be an accomplice in the commission of such an offense [Pen. Code, § 286]. It is doubtful whether it could be said in any case that a child of tender years could so far understand the nature and effect of acts such as those charged against appellant here as to know of their wrongfulness." In *People* v. *Williams*, 12 Cal.App.2d 207, 209-210 [55 P.2d 223], the court declared that proof that the child understood the wrongfulness of the act must be clear and convincing. In *People* v. *Singh*, 121 Cal.App. 107, 110-111 [8 P.2d 898], there is this analysis of a similar problem; "The evidence in the record supports the implied finding of the jury that Boyd was under the age of fourteen years at the time of the attempt to commit the crime upon him. There is no evidence that at the time of the commission of the act charged he knew its wrongfulness. Therefore he could not be an accomplice." Appellant has not directed our attention to any evidentiary material in this record which would distinguish his case from the principles set forth in the decisions just cited, or which would show that the statutory presumption contained in section 26 had not been overcome.

 With respect to the asserted absence of proof of penetration, the boy testified that appellant "put his penis between—in my rectum." Appellant simply says that "the

question whether this brief description rises to the dignity of substantial evidence is in grave doubt.'' As in rape prosecutions, the penetration need only be slight and a rape conviction has been sustained where the hymen was ruptured and dilated but not sufficient to permit complete penetration (*People* v. *Stangler,* 18 Cal.2d 688 [117 P.2d 321]). Whether the boy used the word ''rectum'' to mean an area outside the rectum (between his buttocks) or otherwise, the fact of penetration in cases of this kind may be shown by circumstantial evidence (*People* v. *Singh,* 93 Cal.App. 32, 35 [268 P. 958]). A medical doctor made a rectal examination of the boy two or three days after the asserted act; he noted an area of redness a quarter inch by three-quarters of an inch just inside the opening—in the lower righthand area of the rectum—and concluded that it could have been caused by the insertion of a penis. While this witness was uncertain as to the time of the condition's origin, his testimony was for the jury's evaluation.

Finally, error is claimed in the admission of an asserted accusatory statement and the lack of any response thereto, as well as reference by the prosecutor to this matter in his argument. As mentioned earlier, the police officer advised appellant that he ''was being arrested for 288'' and appellant remained mute; the officer was not permitted to say if appellant had inquired as to what ''288'' referred. Appellant maintains that he had theretofore adopted a policy of silence; therefore, the evidence thus admitted and the comment thereon was prejudicial to his cause, citing *People* v. *Simmons,* 28 Cal.2d 699, 712 [172 P.2d 18]. It does not appear that any such policy was here adopted which is contemplated by the pronouncements in the Simmons case; each case must be governed by the circumstances therein found (*People* v. *Peterson,* 29 Cal.2d 69, 76-77 [173 P.2d 11]). Certainly any seeming prejudice would not warrant a reversal.

The evidence supports the verdict and no error appears which can reasonably be held to have prejudiced any of appellant's substantial rights.

The judgment is affirmed; all other purported appeals are dismissed.

Wood, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied May 9, 1960, and appellant's petition for a hearing by the Supreme Court was denied June 14, 1960.